[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14720
Non-Argument Calendar
_____

D.C. Docket No. 4:08-cr-10070-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN GUTIERREZ,

Defendant-Appellant.


_____

No. 15-14791
Non-Argument Calendar
_____

D.C. Docket No.  4:08-cr-10068-KMM-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN GUTIERREZ,

                                                    Defendant -Appellant.


_____

No. 15-15533
Non-Argument Calendar
_____

D.C. Docket No.  4:07-cr-10049-KMM-1


UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

versus

JUAN ANTONIO GUTIERREZ ARENCEBIA,
a.k.a. Juan Antonio Arencebia,

                                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 16, 2016)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

2

In this consolidated appeal, Defendant Juan Gutierrez Arencebia appeals his total 72-month sentence, imposed upon revocation of supervised release in three separate cases. This is the second time Defendant asks us to review his sentence. The first time this appeal was before us, we vacated Defendant's 72-month sentence, concluding that the district court had committed procedural error in sentencing Defendant by considering conduct involving alien smuggling that had not been proved by a preponderance of the evidence.

On remand, the district court once again sentenced Defendant to 72 months' imprisonment. Defendant now appeals, arguing that his sentence is procedurally and substantively unreasonable. After careful review, we affirm.

## I.    BACKGROUND

Defendant, a Cuban national, is a repeat violator of federal immigration laws. In our previous decision, we provided a detailed description of the multiple human-smuggling attempts, arrests, deportation orders, and prosecutions that lay the foundation for this appeal. *See United States v. Arencebia*, 613 Fed. App'x 882, 883–888 (11th Cir. 2015) (unpublished). We therefore provide only a brief synopsis of the facts and procedural history necessary for resolution of the present appeal.

3

## A.    Defendant's Underlying Convictions

In June 2008, Defendant was sentenced to 24 months' imprisonment followed by three years of supervised release after pleading guilty to conspiracy to induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and illegal reentry, in violation of 8 U.S.C. § 1326(a). Later, in February 2009, Defendant pleaded guilty in two separate cases to conspiracy to induce aliens to enter the United States.  In one of the cases, he was sentenced to 18 months' imprisonment to run consecutively to his 24-month sentence imposed in June 2008.  As to the other case, he was sentenced to 30 months' imprisonment to run concurrently with his other sentences.  He received three years of probation in each case.

## B.    Supervised Release Violation and First Revocation Hearing

Defendant began his term of supervised release in all three cases in August 2011.  Approximately two years later and before the terms of supervised release expired, the probation officer filed separate, but identical, petitions seeking revocation of Defendant's supervised release in each of the three cases.  According to the petitions, Defendant was arrested on October 23, 2013, for committing the offenses of alien smuggling and illegal reentry.  Defendant had thus violated mandatory conditions of his supervised release by:  (1) committing two new criminal offenses; and (2) leaving the judicial district without seeking permission

from the probation officer.  Defendant admitted to leaving the judicial district without permission, but denied committing the offenses of alien smuggling and illegal reentry.  Given Defendant's admission, the Government dismissed the violations related to alien smuggling and illegal reentry.

In anticipation of the revocation hearing, the probation officer prepared three nearly identical written reports and recommendations.  The probation officer indicated that Defendant's underlying convictions for conspiracy to induce aliens to enter the United States were Class C felonies, and therefore the maximum term of imprisonment that could be imposed was 24 months' imprisonment for each violation.  *See* 18 U.S.C. § 3583(e)(3).  Because Defendant's supervised release violation was a Grade C violation and Defendant's criminal history category was I, Defendant's guideline range for the first case was three to nine months' imprisonment.  For the second case, Defendant's guideline range was four to ten months' imprisonment.  For the third case, Defendant's criminal history category was III, which resulted in a guideline range of 5 to 11 months' imprisonment.

At the revocation hearing, Defendant admitted that he left the judicial district on October 23, 2013, and had traveled to international waters without permission from his probation officer.  He also admitted that he was subsequently arrested for alien smuggling and illegal reentry.  Based on his admitted departure from the judicial district without permission, the district court adjudicated him

5

guilty of violating the terms of his supervised release in all three cases. The district court reiterated the probation officer's guidelines calculations in each of the three cases. Concluding that Defendant had shown "utter contempt and disrespect for the laws of the United States" and "appears to be unable or unwilling to conform his behavior to the requirements of the law . . . that this kind of smuggling activity is prohibited," the district court sentenced Defendant to a total of 72 months' imprisonment, consisting of 24 months' imprisonment in each case, to run consecutively to one another.

## C.    First Appeal

On appeal, we concluded that the district court committed procedural error by relying on Defendant's conduct involving alien smuggling, which had not been sufficiently proven by a preponderance of the evidence. *Arencebia*, 613 Fed. App'x at 891–92. We explained that to the extent the district court relied on an affidavit that described Defendant's arrest for alien smuggling, the district court had not provided Defendant an opportunity to contest the reliability of that evidence. *Id.* at 892. Accordingly, we vacated Defendant's sentence and remanded for a new sentencing hearing. *Id.* We stated that on remand, "the district court shall allow Defendant the opportunity to contest any information that

6

the court is considering as a sentencing factor and at which the court shall consider only such conduct as is proved by a preponderance of reliable evidence."[1] *Id.*

### D.    Resentencing Hearing for Violations of Supervised Release

At the outset of the resentencing hearing, the parties agreed that the guidelines calculations remained unchanged.  To meet its burden of establishing that Defendant's October 2013 arrest involved alien smuggling, the Government called Lieutenant Morgan Roy, a pilot with the U.S. Coast Guard, to testify.  Lieutenant Roy stated that while on duty on October 23, 2013, she was directed to relieve an aircraft that was overhead a vessel in the body of water between the Florida Keys and Cuba.  When she arrived on scene, she observed that the vessel was overloaded with people.  The vessel appeared to be having engine trouble and eventually stopped at an abandoned island within the territory of the Bahamas, where all but two people got off of the boat.  The vessel then headed north, eventually stopped, and the two remaining people on board took out fishing gear.

The Government also called Pablo Milian, a special agent with the Department of Homeland Security.  Agent Milian interviewed Defendant following his arrest in October 2013, after the Coast Guard interdicted his vessel

---

[1]  In the meantime, while Defendant's first appeal was pending in our Court, a jury convicted him of attempted illegal reentry, in violation of § 1326(a), for the conduct stemming from his October 2013 arrest. *Id.* at 888.  Defendant was sentenced to 92 months' imprisonment to be served consecutively to the sentences imposed for the violations of supervised release. *Id.*  We later affirmed Defendant's conviction and sentence. *United States v. Gutierrez*, 626 Fed. App'x 923, 926 (11th Cir. 2015) (unpublished).

off of the Florida Keys.  At first, Defendant told Agent Milian that he had borrowed a boat from a friend for a fishing trip, but they encountered engine trouble and headed back to the United States.  When Agent Milian showed Defendant a photograph of Defendant's vessel filled with people on it, Defendant changed his story.  Defendant told Agent Milian that he encountered a stranded boat and he had picked up those passengers and dropped them off on an island.

Agent Milian further testified that this was not the first time he had interviewed Defendant, as he had first encountered Defendant in 2005 under similar circumstances.  In 2005, the Coast Guard interdicted a vessel that Defendant was the master of, and which contained a large number of undocumented Cuban nationals.  When Agent Milian interviewed Defendant at that time, Defendant told him the same story—he was fishing off of the Florida Keys when he discovered a group of stranded people and took them on board his vessel.  Agent Milian testified that the investigation in 2005 resulted in one of the alien-smuggling convictions underlying the current supervised release revocation proceeding.

The district court confirmed with Defendant that the problem with the prior sentencing hearing—the use of unreliable evidence to support the determination that Defendant had engaged in alien smuggling—was no longer an issue given the evidence presented by the Government during the resentencing hearing.

Nevertheless, Defendant maintained that the evidence was not sufficient to demonstrate that he had engaged in alien smuggling. Based on the testimony of the two witnesses, the district court determined that the Government had demonstrated by a preponderance of the evidence that Defendant attempted illegal reentry and attempted to commit alien smuggling.

Defendant argued that a sentence significantly lower than the 72-month sentence imposed at the prior sentencing hearing was appropriate, especially given the applicable guideline range and the 92-month sentence Defendant received for his most recent attempted illegal reentry conviction. The district court stated that Defendant "shows utter disrespect for the law, and the only thing that's going to stop him from continuing to engage in alien-smuggling activity and the danger and the risk to the lives of other people is incarceration." After considering the parties' arguments, the district court revoked Defendant's supervised release and sentenced him to 24 months' imprisonment in each of the three cases to run consecutively, resulting in a total sentence of 72 months' imprisonment. This appeal followed.

## II.    DISCUSSION

Using a two-step process, we review the reasonableness of a district court's sentence for an abuse of discretion. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). We first look to whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range,

treating the Sentencing Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Id.* Then we examine whether the sentence is substantively reasonable in light of the totality of the circumstances. *Id.* The party challenging the sentence bears the burden of showing that it is unreasonable. *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

When revoking a defendant's term of supervised release, 18 U.S.C. § 3583(e) instructs courts to consider certain 18 U.S.C. § 3553(a) factors in determining an appropriate sentence. *See* 18 U.S.C. § 3583(e)(3). In part, sentencing courts must consider (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need to adequately deter criminal conduct, (3) the need "to protect the public from further crimes of the defendant," (4) the applicable sentencing range, and (5) any pertinent policy statements of the Sentencing Commission. *See* 18 U.S.C. § 3583(e), 3553(a)(1), (a)(2)(B)-(C), (a)(4)-(5).

## A.    Procedural Reasonableness

Defendant argues that the district court committed procedural error by basing his sentence on the alien-smuggling conduct, rather than on his actual supervised release violation of leaving the judicial district without permission.

10

Under federal law, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The Guidelines also note that the information a court may consider in formulating a sentence is expansive and includes evidence that would not be admissible at trial, so long as the information has a "sufficient indicia of reliability" to support its accuracy. U.S.S.G. § 6A1.3(a). In other words, the relevant facts at sentencing must be established by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156 (1997).

Here, Defendant's sentence is not procedurally unreasonable because the district court was permitted to consider Defendant's alien-smuggling conduct. In determining the proper sentence to impose upon revocation of supervised release, the district court is not limited solely to the information about the admitted violation. *See* 18 U.S.C. § 3661. Instead, the information the court can consider is vast, so long as it is supported by a preponderance of the evidence. *See Watts*, 519 U.S. at 156. After hearing testimony from two Government witnesses, the district court concluded that the Government established by a preponderance of the evidence that Defendant engaged in alien smuggling. Moreover, Defendant has abandoned any argument that this determination was not supported by a

11

preponderance of the evidence, as he does not raise that argument on appeal. *See*

*United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining

that issues not raised on appeal are deemed abandoned). But even if Defendant

had not abandoned this argument, any such argument would have been meritless,

as the testimony of Lieutenant Roy and Agent Milian was sufficient to show by a

preponderance of the evidence that Defendant engaged in alien smuggling. *See*

*Watts*, 519 U.S. at 156.

Furthermore, we are not persuaded by Defendant's argument that the district

court could not consider his alien-smuggling conduct, as we indicated in

Defendant's first appeal that the district court could consider the alien-smuggling

conduct in fashioning his sentence, so long as that conduct was established by a

preponderance of the evidence. *See Arencebia*, 613 Fed. App'x at 891–92. At the

resentencing hearing, the district court provided Defendant the opportunity to

cross-examine the Government's witnesses, heard argument from Defendant, and

then found the alien-smuggling conduct was proved by a preponderance of the

evidence. Thus, our previous concerns regarding the procedural reasonableness of

Defendant's sentence are no longer at issue.

### B.    Substantive Reasonableness

Defendant next argues that his sentence is substantively unreasonable because the district court varied upward to the statutory maximum sentence based on Defendant's conduct involving alien smuggling.

We disagree.  Although Defendant's 24-month sentences reflect upward variances from the respective guideline ranges for each supervised release violation, his sentences to the statutory maximum, were not "outside the range of reasonable sentences dictated by the facts of the case."  *See United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*).

Indeed, in determining that an upward variance was necessary as to each violation, the district court considered several of the relevant sentencing factors, including Defendant's history and characteristics, the nature and circumstances of the offense, and the need for deterrence.  *See* 18 U.S.C. §§ 3583(e), 3553(a)(1), (a)(2)(B)-(C), (a)(4)-(5); *see also Irey*, 612 F.3d at 1186–87 (explaining that when a district court imposes a sentence outside of the applicable guideline range, the justification must be "'sufficiently compelling to support the degree of the variance'").  In particular, Defendant had three prior convictions for alien smuggling during the approximately ten years he had been in the United States. Further, the testimony presented at sentencing was sufficient to establish by a preponderance of the evidence that Defendant was again attempting to smuggle

13

aliens when he was caught outside the judicial district in October 2013. These repeated instances of alien smuggling, including the 2013 instance that occurred after Defendant had already served terms of imprisonment for three prior alien-smuggling convictions, suggest that a lengthier sentence was needed to adequately deter Defendant. *See* 18 U.S.C. § 3553(a)(2)(B). In addition, Defendant exhibited a callous disregard for human life, abandoning the aliens he had smuggled on an uninhabitable island, with limited food and water.

Although Defendant argues that the district court relied too heavily on the alien-smuggling conduct surrounding his supervised release violation, instead of focusing on the actual admitted violation of leaving the judicial district without permission, it was entirely within the district court's discretion to do so. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court. . . ." (quotations omitted)). And to the extent Defendant still maintains that the district court was not permitted to consider the alien-smuggling conduct, we have already explained that the district court was permitted to consider any information relevant to sentencing, so long as it was proved by a preponderance of the evidence. *See* 18 U.S.C. § 3661; *Watts*, 519 U.S. at 156.

Finally, Defendant relies on U.S.S.G. § 5G1.2—the provision governing sentencing on multiple counts of conviction—to argue that his consecutive

14

sentences are unreasonable.  This argument is without merit, as sentences imposed upon revocation of supervised release are governed by Chapter 7 of the Sentencing Guidelines, not § 5G1.2.  *See* U.S.S.G. § 5G1.2; U.S.S.G. Chap. 7; *See United States v. Quinones*, 136 F.3d 1293, 1295 (11th Cir. 1998) (concluding that § 5G1.2 did not limit the district court's authority to impose consecutive terms of imprisonment upon revocation of supervised release, as the policy statements in Chapter 7 governed revocation sentences).

Accordingly, Defendant has not shown that the district court abused its discretion by imposing a total sentence of 72 months' imprisonment.

**AFFIRMED.**